IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

FELICIA B. ARNOLD,                )
                                  )
          Plaintiff,              )
                                  )
v.                                )   Case No. CIV-15-120-KEW
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social            )
Security Administration,          )
                                  )
          Defendant.              )

**OPINION AND ORDER**

Plaintiff Felicia B. Arnold (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on September 25, 1987 and was 26 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a phlebotomist, retail store manager, and waitress. Claimant alleges an inability to work beginning February 24, 2010 due to limitations resulting from urinary incontinence, anxiety, asthma, and depression.

**Procedural History**

On July 11, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On October 22, 2013, an administrative hearing was held before Administrative Law Judge ("ALJ") Bernard Porter in McAlester, Oklahoma. He issued an unfavorable decision on November 20, 2013. The Appeals Council denied review of the ALJ's decision on January 27, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to perform proper evaluations at steps 4, and 5; (2) failing to properly evaluate the medical and non-medical source evidence; and

(3) failing to perform a proper credibility determination.

**Steps Four and Five Evaluations**

In his decision, the ALJ found Claimant suffered from the severe impairments of obesity; urinary incontinence; hypertension; diabetes mellitus; polyneuropathy of the hands and feet; asthma; GERD; migraines; major depressive disorder; and generalized anxiety. (Tr. 21). The ALJ determined Claimant retained the RFC to perform a full range of sedentary work. In so doing, the ALJ found Claimant could lift/carry 10 pounds occasionally and less the 10 pounds frequently; stand/walk about two hours total during an eight hour workday; sit for about six hours in an eight hour workday; occasionally use hand and foot controls; occasionally climb ramps and stairs but never climb ladders or scaffolds; never crawl; frequently handle, finger, and feel bilaterally; could not work around unprotected heights or moving mechanical parts; no concentrated exposure to dust, fumes, or gases; no concentrated exposure to humidity or wetness; avoid any environments where there were temperature extremes; required a sit or stand option which allows for a change in position at least every 30 minutes; limited to simple tasks and simple work-related decisions; limited to occasional interaction with supervisors and co-workers; no interaction with the public; and time off task would be accommodated by normal work breaks. (Tr. 24). After consulting

5

with a vocational expert, the ALJ concluded that Claimant could perform the representative jobs of suture winder, table worker, and touch up screener, all of which the ALJ determined existed in sufficient numbers in both the regional and national economies. (Tr. 33). As a result, the ALJ determined Claimant was not under a disability from February 24, 2010 through the date of the decision. Id.

Claimant first contends that the ALJ failed to include her requirement for structure and supervision, isolation, inability to adjust to stress, problems accommodating her incontinence, and problems with concentration, persistence, or pace in the RFC or hypothetical questioning of the vocational expert. As an initial matter, the ALJ determined Claimant was moderately limited in the area of concentration, persistence, or pace as a part of the paragraph B determination on mental impairments. (Tr. 23). Claimant appears to argue a perceived requirement that the limitations found in the paragraph B criteria must be included in the hypothetical questioning of the vocational expert. This Court rejects this notion as it is unsupported by the regulations and the case authority in this Circuit. The social security ruling on assessing a claimant's RFC cautions that "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' ... criteria are not an RFC assessment but are used to rate the severity

of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Soc. Sec. R. 96-8p. The Tenth Circuit has specifically found that the failure to include a moderate limitation in social functioning, for example, in the RFC based solely upon the finding at step three is not error. Beasley v. Colvin, 520 Fed. Appx. 748, 754 (10th Cir. 2013). No error is attributed to the omission of the paragraph B limitations from the RFC.

Claimant also contends the ALJ did not include limitations stemming from her urinary incontinence in the RFC or questioning of the vocational expert. Claimant reported to the consultative psychological examiner that she has bladder problems which required the placement of mesh into her bladder. She stated that any urine causes pain and pressure, that she must use the bathroom every 10-15 minutes, and she frequently has to change pads and clothes due to incontinence leaking. (Tr. 262, 326).

The ALJ discounted Claimant's testimony based upon the objective medical record of treatment for the condition. (Tr. 31). In particular, in January of 2010, Claimant was implanted with a urethral sling to attempt to improve her stress and urge incontinence which caused her to lose urine when she laughed or coughed and she had difficulty making it to the bathroom without leaking. (Tr. 26).

Claimant's condition appeared to improve thereafter with the

7

assistance of medication. In June of 2011, Claimant had improved from her baseline with very little leakage and only with a full bladder. (Tr. 292). The medical record contains no complaints of incontinence from July of 2010 through April of 2011, despite obtaining medical care for other conditions during this period from the Chickasaw Nation Medical Center. (Tr. 256-61). However, in April of 2011, Claimant went for a follow up on her bladder condition, complaining that the sling worked for four to five months but her incontinence returned worse than before. (Tr. 286, 290). In October of 2011, Claimant complained of lower abdominal pain accompanied by urinary urgency, frequency, and pain in the bladder area. She had a stabbing pain when her bladder got too full. Claimant was prescribed anti-inflammatory medication for the condition. (Tr. 334-35). Claimant did not complain of the same condition a month later. (Tr. 338).

In May of 2012, Claimant underwent urodynamic studies which revealed no stress urinary incontinence with urodynamic studies or with standing stress test with vigorous coughing. Claimant did experience pelvic pain when filling the bladder to 300 cc. No obvious void dysfunction was noted on intra-abdominal pressure flow. (Tr. 433).

In June of 2012, Claimant complained of urge incontinence but denied frequent stress incontinence. Standing stress testing was

8

negative. (Tr. 423). In July of 2012, Claimant received botox injections in the bladder. (Tr. 413-14). In December of 2012, Claimant maintained her complaints of urge incontinence which requires that she void her bladder every 20-30 minutes and six to seven times a night. (Tr. 406). The ALJ noted Claimant's limited financial means. (Tr. 27). While he noted Claimant did not complain of urinary incontinence in May of 2013, the record indicates she still maintained struggling with the condition in September of 2013. (Tr. 454).

Claimant has consistently battled urge incontinence throughout the medical record and no medical authority has expressed doubt of malingering or that she continues to have problems. "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case

9

record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). Certainly a requirement to void the bladder every 20 to 30 minutes materially affects Claimant's ability to engage in basic work activities without some accommodation in the RFC. On remand, the ALJ shall explain his conclusion that this condition had little effect upon Claimant's ability to engage in basic work activity and indicate in the record where a medical authority doubted the frequency of Claimant's urinary urge incontinence.

The mental issues surrounding a requirement for structure and support stem from her bladder issues. (Tr. 328). Should the bladder issues persist, the ALJ should accommodate any such requirement for structure in his RFC.

**Evaluation of Medical and Non-Medical Source Evidence**

Claimant challenges the ALJ's assessment of the mental status examination performed by Dr. Shalom Palacio-Hollmon on October 1, 2011. Dr. Palacio-Hollmon concluded Claimant has an overall fair adjustment to stress, should seek psychiatric therapy for coping, has a poor prognosis for her mental health issues, should undergo

additional testing and evaluation by a psychiatrist for medication, has a limited ability to deal with the public due to anxiety, depression and ideas of reference, has the ability to understand, remember, and carry out simple and complex instructions but requires structure, supervision, and increased support, and "is unlikely to meet demands of a work environment." (Tr. 328).

The ALJ gave "limited weight" to Dr. Palacio-Hollmon's report, finding it to be "overly speculative and inconsistent with the degree of reported limitation and the stability of mood symptoms on psychotropic medications." (Tr. 30). The ALJ did not explain which portions of Dr. Palacio-Hollmon's report was "overly speculative" but did adopt those portions which supported a finding of non-disability. Id. Little analysis of the opinion was provided by the ALJ and certainly no explanation of his conclusion. On remand, the ALJ shall re-evaluate Dr. Palacio-Hollmon's opinion under the factors in Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) and explain with detail his assessment of the opinion. In doing so, the ALJ should avoid the urge to "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

The ALJ also gave "little weight" to the third party function statement provided by Claimant's mother, concluding "a lay witness

11

is unable to determine whether her observed behaviors are medically compelled" and her opinion was not supported by the medical record. (Tr. 30). The ALJ apparently believed the testimony to be "sincere" and, therefore, presumably credible. Id. The ALJ should specifically indicate the inconsistencies between the medical record, which appears to support Claimant's continued urge incontinence, and the mother's statements on her observations of Claimant's condition.

**Credibility Determination**

The ALJ found Claimant was not "completely credible." (Tr. 31). He based this conclusion upon a finding that the medical record demonstrated improvement in her incontinence. However, the ALJ continued to fail to distinguish between the various forms of incontinence from which Claimant suffers. While stress and standing incontinence has certainly improved, the evidence supports continued problems with urge incontinence. On remand, the ALJ should evaluate Claimant's testimony in light of the consistent medical evidence of urge incontinence.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is

**REVERSED** and the case is **REMANDED** for further proceedings.

IT IS SO ORDERED this 8th day of September, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE